UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARY L. ANDERSON,                         )
                                          )  No. CV-04-5087-MWL
                Plaintiff,                )
                                          )  ORDER GRANTING DEFENDANT'S
        v.                                )  MOTION FOR SUMMARY JUDGMENT
                                          )
JO ANNE B. BARNHART,                      )
Commissioner of Social                    )
Security,                                 )
                                          )
                Defendant.                )
                                          )
_____

    BEFORE THE COURT are cross-Motions for Summary Judgment,
noted for hearing without oral argument on October 17, 2005. (Ct.
Rec. 9, 16).  Plaintiff Mary L. Anderson ("Plaintiff") did not
file a reply.  Attorney Ray R. Whitlow represents Plaintiff;
Special Assistant United States Attorney David J. Burdett
represents the Commissioner of Social Security ("Commissioner").
The parties have consented to proceed before a magistrate judge.
(Ct. Rec. 4).  After reviewing the administrative record and the
briefs filed by the parties, the Court **GRANTS** Defendant's Motion
for Summary Judgment (Ct. Rec. 16) and **DENIES** Plaintiff's Motion
for Summary Judgment (Ct. Rec. 9).
///

**JURISDICTION**

On May 16, 2001, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability since February 26, 2001. (Administrative Record ("AR") 158-160). The application was denied initially and on reconsideration. On September 16, 2002, Plaintiff appeared before Administrative Law Judge ("ALJ") R.J. Payne, at which time testimony was taken from Plaintiff, medical expert Robert Willkens, M.D., and vocational expert Richard Cheney. (AR 419-484). On April 25, 2003, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 100-111). The Appeals Council denied a request for review on June 28, 2004. (AR 6-10). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 49 years old on the date of the ALJ's decision. (AR 438, 158, 111).

At the administrative hearing held on September 16, 2002, Plaintiff stated that she completed high school and received a college degree in Liberal Arts from Central Washington University in 1984. (AR 439, 175). She testified that she stands approximately 5'4" tall and weight about 170 pounds. (AR 439, 168). Following college, Plaintiff initially stayed at home with

her children.  (AR 440).  From 1990 to 1993, Plaintiff worked as a
Mental Health Counselor at a psychiatric hospital.  (AR 441, 170).
During her tenure at the psychiatric hospital, Plaintiff worked
for over one year as the lead therapist for the adolescent unit.
(AR 441).  From 1993 to 1996 Plaintiff worked as an intake
coordinator at Lutheran Social Services.  (AR 444, 170).
Beginning in 1996, Plaintiff, along with a business partner,
formed Counseling Services of Tri-Cities and worked in that
capacity until March of 2001.  (AR 445-447, 170).

Plaintiff last worked in March of 2001.  (AR 169, 447).  She
reported that she could not handle the stress and acuity at the
psychiatric hospital and that fatigue, muscle pain and a lack of
concentration prevented her from continuing to work.  (AR 169).
Plaintiff testified that she stopped working because Dr. Krause
told her to take some time off of work.  (AR 446).  Plaintiff
stated that she did not want to take medical leave from work and,
due to prior commitments, she waited a couple of months before
stopping work.  (AR 446-447).  She has not worked since.  (AR
460).  Plaintiff testified that she has not attempted to return to
work because she no longer has clients.  (AR 460).  Although she
stated that she would hope she could return to counseling, she
indicated that she could not see a return to the field in the near
future.  (AR 460).

Plaintiff stated that she has had constant pain in her upper
body, neck, head, shoulders and trapezoid region since 1996.  (AR
447-448).  She testified that she has had pain in her elbows,
wrists and hands (apparently diagnosed as carpal tunnel syndrome),
///

muscle spasms in her back region, and pain in her lower extremities.  (AR 448-450).  On a scale of one to ten, with ten being the worst pain imaginable, she related that her pain was a five generally and a 12 when at its worst.  Plaintiff indicated that she also suffered from fatigue in February of 2001, described as being exhausted but not being able to sleep, as well as problems with concentration.  (AR 450-451).

Plaintiff also testified that she has experienced periods of depression since she ceased working in February of 2001.  (AR 458).  She stated that she had not taken medication for depression until this past year and did not see a psychiatrist, psychologist or counselor for depression.  (AR 458-459).

Plaintiff testified that, on an average day, she could walk about one-quarter to one-half of a mile.  She usually takes a 30-minute walk without difficulty.  (AR 452-453).  She stated that she could lift five to 10 pounds, stand for about 30 minutes, and sit about one hour without significant problem.  (AR 453-455).

Plaintiff indicated that she continues to cook and clean, with assistance from her husband if needed, and is able to do the grocery shopping for 30 minutes to an hour at a time.  (AR 455-456).  She stated that she was unable to do yard work or work in her rose garden this past year due to fatigue and pain.  (AR 456-457).  During a typical day, Plaintiff related that the most important thing she does is "stay up" and moving about until it is time for bed.  (AR 466-467).  She testified that she will "piddle around the house," doing the ironing, laundry and other little tasks around the house. (AR 467).  Plaintiff stated that she ///

attends church services every Sunday, which last approximately one hour and 15 minutes, and occasionally will go out to eat or to the movies with her family.  (AR 468-469).

Medical expert Robert Willkens and vocational expert Richard Cheney also testified at the administrative hearing held on September 16, 2002.  (AR 421-438, 470-481).

<u>**SEQUENTIAL EVALUATION PROCESS**</u>

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the ///

decision maker proceeds to step two, which determines whether
Plaintiff has a medically severe impairment or combination of
impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

     If Plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares Plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),
416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment
meets or equals one of the listed impairments, Plaintiff is
conclusively presumed to be disabled.  If the impairment is not
one conclusively presumed to be disabling, the evaluation proceeds
to the fourth step, which determines whether the impairment
prevents Plaintiff from performing work he has performed in the
past.  If Plaintiff is able to perform his previous work, he is
not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff
cannot perform this work, the fifth and final step in the process
determines whether Plaintiff is able to perform other work in the
national economy in view of his residual functional capacity and
his age, education and past work experience.  20 C.F.R. §§
404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

     The initial burden of proof rests upon Plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once Plaintiff establishes that a physical or mental
///

impairment prevents him from engaging in his previous occupation.
The burden then shifts to the Commissioner to show (1) that
Plaintiff can perform other substantial gainful activity and (2)
that a "significant number of jobs exist in the national economy"
which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498
(9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a
Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999). "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988). Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted). "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
///

On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, February 26, 2001. (AR 100-101).  At step two, the ALJ determined that Plaintiff has the severe impairments of Fibromyalgia and depression, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 105).  The ALJ indicated that
///

Plaintiff also has bilateral carpal tunnel syndrome, but that this impairment did not meet the durational requirements of the Act. (AR 105).

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a wide range of light exertion work. (AR 107). He found that Plaintiff can sit or stand for two hours at a time, for a total of six hours, in an eight hour workday with normal breaks, sit for six hours at a time in an eight hour workday with normal breaks, should avoid frequent or prolonged pushing or pulling of objects weighing 10 to 20 pounds, could occasionally engage in stooping, crouching, kneeling, crawling, or climbing of ramps or stairs, should avoid climbing ladders, ropes, or scaffolds, and should avoid frequent or prolonged overhead reaching. (AR 107). The ALJ additionally held that Plaintiff has mild to moderate, frequent pain, for which she takes medication, but would be able to remain reasonably attentive and responsive in a work setting and would be able to carry out normal work assignments satisfactorily. (AR 107). He also indicated that Plaintiff could be expected to have lessened concentration, persistence and pace in the workplace, but could still be productive. (AR 107). With regard to Plaintiff's mental limitations, the ALJ determined that Plaintiff's depression causes "mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation." (AR 105).

///

///

At step four of the sequential evaluation process, the ALJ found that, based on Plaintiff's ability to perform a wide range of light exertion level work, coupled with the vocational expert's testimony, Plaintiff could return to her past relevant work as an intake caseworker, but would not be capable of returning to her past work as a family counselor due to the decrease in her alertness. (AR 108). The ALJ also determined that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's residual functional capacity, age, education, and work experience, there were a significant number of jobs in the national economy which she could perform despite her limitations. (AR 108-109). Examples of such jobs included work as a chemical dependency trainee, work in final assembly, and work as a surveillance system monitor. (AR 109). Accordingly, the ALJ determined at step four of the sequential evaluation process, and alternatively at step five, that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 108-111).

## ISSUES

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1.    The ALJ and Appeals Council erred by failing to give controlling weight to treating source medical opinions;

2.    The ALJ and Appeals Council erred by failing to make proper credibility findings as to the credibility of Plaintiff and the lay witnesses;

///

///

3.    The ALJ and Appeals Council erred by finding Plaintiff was capable of performing her past relevant work, as well as performing light exertion work;

4.    The ALJ and Appeals Council erred by failing to properly evaluate Plaintiff's complaints of pain; and

5.    The ALJ and Appeals Council erred by declining Plaintiff's request for a supplemental hearing.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.   Credibility**

Plaintiff argues that the ALJ erred by failing to make proper credibility findings as to Plaintiff's testimony and the testimony of lay witnesses, Plaintiff's husband and Plaintiff's former business partner.  (Ct. Rec. 10, pp. 15-17, 18-21).  With respect to Plaintiff's credibility, Plaintiff specifically asserts that the ALJ erred by failing to take into consideration and properly evaluate her pain.  (Ct. Rec. 10, pp. 18-21).  The Commissioner contends that the ALJ appropriately evaluated Plaintiff's pain testimony and provided legally sufficient rationale for finding Plaintiff's testimony not fully credible.  (Ct. Rec. 17, pp. 8-10).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.

1990).  Once the claimant produces medical evidence of an
underlying impairment, the ALJ may not discredit her testimony as
to the severity of an impairment because it is unsupported by
medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.
1998) (citation omitted).  Absent affirmative evidence of
malingering, the ALJ's reasons for rejecting the claimant's
testimony must be "clear and convincing."  *Lester v. Chater*, 81
F.3d 821, 834 (9th Cir. 1995).  "General findings are
insufficient:  rather the ALJ must identify what testimony is not
credible and what evidence undermines the claimant's complaints."
*Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th
Cir. 1993).

    The ALJ determined that Plaintiff's allegations regarding her
pain and limitations were less than fully credible.  (AR 106).  In
support of this finding, the ALJ indicated as follows:
(1) Plaintiff's testimony of significant pain and muscle spasms,
with pain all over her body, is not supported by the objective
evidence of record; (2) Plaintiff, on her own accord, discontinued
wearing splints and taking prescribed medications, despite her
doctors' orders and complaints of significant pain; (3)
Plaintiff's testimony of limiting fatigue is not supported by the
record which shows her engaging in numerous activities, including
taking care of her house and yard, swimming and other
social activities; (4) Plaintiff's testimony of greater
limitations over the past year and a half is unsubstantiated by
the record which displays that her condition was actually doing
better and that pain management was doing quite well;
(5) Plaintiff's reports of disabling pain and fatigue are

contradicted by her reports to Dr. Krause of swimming and running and not needing to take her prescribed Vioxx and Dr. Krause's report that claimant is capable of performing work-like activities; and (6) Dr. Dicken reported inconsistencies in his examinations and noted a lack of full effort by Plaintiff. (AR 106).

The ALJ notes that Plaintiff's testimony of significant pain and allegations of increased limitations over the past year is not supported by the objective medical evidence of record. A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided that it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). The ALJ notes that an MRI exam of the lumbar spine and x-rays have been essentially negative, as have neurological evaluations. (AR 106). Moreover, as discussed more fully below, the credible medical evidence of record, including the reports from her treating physicians, does not support Plaintiff's allegations of disabling pain and limitations. Since the ALJ notes many factors aside from the lack of supporting objective medical evidence for discounting Plaintiff's allegations, the ALJ did not err in discounting Plaintiff's testimony and finding that her subjective complaints regarding her functional limitations were not fully credible.

The ALJ noted that, although Plaintiff complained she had become more limited in her activities in the past year and a half, the record reflected that her condition had been stable for a period of time and, by January 2003, pain management was doing quite well. (AR 106, 388). On March 3, 2003, Plaintiff indicated

that overall her fibromyalgia management was doing okay. (AR 391). The ALJ indicated that Plaintiff's reports of pain and fatigue were contradicted by reports from her treating physician revealing that she was active and not in need of her prescribed medication. (AR 106, 264). The ALJ also reported that Dr. Dicken noted inconsistencies in his examinations and noted a lack of full effort by Plaintiff. (AR 106, 276-277).

The ALJ indicated that Plaintiff, on her own accord, discontinued wearing splints and taking prescribed medications. (AR 106). Plaintiff also reported to Dr. Krause that she had not needed to take Vioxx. (AR 264). Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The fact that Plaintiff failed to comply with the medical treatment prescribed by her physicians; namely, taking her prescribed medications and continuing to wear her splints, discounts her claim of disabling pain and limitations.

With regard to her daily activities, it is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603. The ALJ indicated that Plaintiff's allegations of pain and fatigue were inconsistent with the record evidence which demonstrates that she was engaged in taking care of her house and yard, swimming, and doing other social activities. (AR 106).

///

///

Dr. Krause filled out a Fibromyalgia Residual Functional Capacity Questionnaire on January 31, 2002, indicating that Plaintiff was incapable of even "low stress" work but also indicating that he felt Plaintiff was capable of performing low stress jobs. (AR 289). In that questionnaire, Dr. Krause responded to questions about Plaintiff's functional limitations in a competitive work situation without indicating Plaintiff could not work. (AR 289-292). On August 22, 2001, Dr. Krause noted that Plaintiff had a busy summer swimming and running in the pool, had not needed her Vioxx, was more cheerful and alert and continued to gradually do better. (AR 264). The ALJ properly found that such activities were inconsistent with Plaintiff's alleged limitations and thus detracted from her credibility.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

After reviewing the record, the undersigned judicial officer finds that the reasons provided by the ALJ for discounting Plaintiff's subjective complaints are sufficient and supported by substantial evidence in the record. The reasons provided by the ALJ for finding her allegations not fully credible are clear and convincing. Accordingly, the ALJ did not err by concluding that

Plaintiff's subjective complaints regarding the extent of her functional limitations were not fully credible in this case.  (AR 106).

Plaintiff further contends that the ALJ erred by not making proper credibility findings as to the testimony of lay witnesses Frederic Anderson, Plaintiff's husband (AR 216-219), and Plaintiff's former business partner (AR 203-207).  (Ct. Rec. 10, pp. 15, 17, 19, 21).  The ALJ may not ignore or improperly reject the **probative** testimony of a lay witness without giving reasons that are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (emphasis added).  The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2).

Although the ALJ failed to specifically address the statements of Mr. Anderson and Plaintiff's former business partner, it is clear that the ALJ considered Plaintiff's functional limitations.  Any consideration of the testimony of those lay witnesses does not indicate that Plaintiff is limited to a greater extent than that found by the ALJ in this case.  Moreover, the lay witnesses' testimony was not expressly rejected by the ALJ, and the ALJ was therefore not required to give an explanation for his consideration of their testimony.  Accordingly, the ALJ did not err with regard to the lay witnesses' testimony.

///

///

**B.  Residual Functional Capacity**

Plaintiff contends that the ALJ erred by concluding that she could perform light exertion work and that she could return to her past relevant work as an intake coordinator.  (Ct. Rec. 10, pp. 18-21).  Plaintiff essentially asserts that the ALJ's RFC finding is not supported by substantial evidence in this case.  (Ct. Rec. 10, pp. 18-21).  In making this argument, Plaintiff contends that the ALJ erred by failing to give controlling weight to the medical opinions of Plaintiff's treating physicians Charles E. Krause, M.D., and Donald G. Dicken, M.D., P.C.  (Ct. Rec. 10, pp. 13-15). In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  To reject the treating physician's opinion, the ALJ must state specific, legitimate reasons that are supported by substantial evidence.  *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. The Commissioner responds that the ALJ appropriately evaluated the medical evidence of record.  (Ct. Rec. 17, pp. 7-8).

**1.  Dr. Krause**

On January 14, 2000, Dr. Krause reported that Plaintiff was doing well in a number of ways and that her Fibromyalgia, with depression, was stable with significant improvement since starting on the medication Neurontin.  (AR 254).  On April 7, 2000, it was reported that Plaintiff attended a convention in Las Vegas, the Neurontin was helping as she did not require as long of a nap, and she had more energy.  (AR 255).  On June 15, 2000, Dr. Krause ///

indicated that Plaintiff was feeling "pretty good" on the Neurontin despite current stressors.  (AR 257).  He diagnosed Plaintiff with depression, Fibromyalgia, and hypothyroidism.  (AR 257).

On October 13, 2000, Plaintiff reported to Dr. Krause that she had lost weight due to performing "lots of yard work."  (AR 258).  However, Plaintiff also reported her Fibromyalgia symptoms had been worse and she had been experiencing fatigue.  (AR 258).  On November 20, 2000, Plaintiff indicated her symptoms were minimally better but that an increase in Neurotin had not helped much.  (AR 259).  On December 29, 2000, Dr. Krause noted that claimant was feeling better overall and had a little more energy.  (AR 260).

On January 30, 2001, Dr. Krause indicated that claimant was having severe low back muscle spasms and could barely tolerate her two and one-half day work week.  (AR 261).  On January 30, 2001, Dr. Krause also wrote a letter recommending that Plaintiff take six months leave from work to allow her body to recover and to reduce stress.  (AR 252).  Dr. Krause opined that Plaintiff's Fibromyalgia, stress and other medical problems were aggravated by the stress of her job.  (AR 252).

On March 27, 2001, Plaintiff indicated to Dr. Krause that she had been doing "a lot of yard work and things that make her sweat and use her body."  (AR 262).  Plaintiff indicated that she was not missing her former job and was happy to be away from it.  (AR 262).  On May 11, 2001, Plaintiff reported to doing fairly well.  (AR 263).  Dr. Krause diagnosed Fibromyalgia, depression and chronic pain.  (AR 263).

On August 22, 2001, Dr. Krause noted that Plaintiff had a busy summer swimming and running in the pool, had not needed her Vioxx and was more cheerful and alert. (AR 264). He indicated that Plaintiff continued to gradually do better, but had experienced some setbacks. (AR 264).

On September 18, 2001, Dr. Krause noted that Plaintiff seemed to be spiraling down with no known cause. (AR 265). Plaintiff reported to being lethargic, having no energy, and being worse since her last visit. (AR 265). On September 18, 2001, Dr. Krause referred Plaintiff to Dr. Dicken for an evaluation of Plaintiff's Fibromyalgia. (AR 253).

On January 3, 2002, Dr. Krause indicated that Plaintiff's fatigue remained very high, sleep was poor and she seemed to hurt all over. (AR 318). On January 31, 2002, Dr. Krause indicated that Dr. Dicken had nothing new to add to his management of Plaintiff. (AR 318). He indicated that he filled our a report "apparently from her lawyer about her disability." (AR 318).

On January 31, 2002, Dr. Krause filled out a Fibromyalgia Residual Functional Capacity Questionnaire. (AR 287-292). Dr. Krause indicated that he had been treating Plaintiff since 1990 for Fibromyalgia, depression, insomnia, hypothyroidism, menopause symptoms, and peripheral edema. (AR 287). He noted that he did not believe Plaintiff was a malingerer. (AR 288). Dr. Krause opined that Plaintiff was capable of performing low stress jobs due to the fact that sometimes she can tolerate the high stress in her everyday life. (AR 289).

///

///

With regards to her limitations, Dr. Krause found Plaintiff capable of walking one mile on a good day but only one-quarter of a mile on a bad day and sitting or standing continuously for 20 to 30 minutes at one time. (AR 289). In an eight-hour workday, Dr. Krause opined that Plaintiff could sit and stand/walk about two hours each, with normal breaks. (AR 289). Dr. Krause additionally indicated that Plaintiff would need periods of walking around during an eight-hour workday, would need a job which permits shifting positions at will from sitting, standing or walking, would need to take unscheduled breaks every one to two hours, for about 10 to 20 minutes at a time, would need to lie down or sit quietly once a day, and, with prolonged sitting, would need to elevate her legs six to 12 inches. (AR 280). Dr. Krause opined that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds or less, but would have significant limitations in doing repetitive reaching, handling or fingering. (AR 291).

On March 4, 2002, Plaintiff visited Dr. Krause and complained of a lack of sleep at night, hot flashes and persistent pain. (AR 319). On April 15, 2002, Dr. Krause noted that Plaintiff brought in a list of about nine different problems, including hot flashes, weight gain, bruising, muscle pain, chronic pains, depression, blood pressure issues, muscle twitching and insomnia, but did not want Dr. Krause to perform tests on her because she did not have insurance. (AR 321). On May 15, 2002, Dr. Krause diagnosed claimant with menopause, better control, Fibromyalgia, stable,

///

///

depression, stable, and chronic pain, stable.  (AR 322).  On July 15, 2002, Dr. Krause assessed Fibromyalgia, depression, elevated blood pressure and trigger points.  (AR 323).

On September 13, 2002, Dr. Krause indicated that every part of Plaintiff's body that he touched hurts her, including her face, shoulders, arms, and legs.  (AR 362).  Plaintiff reported to be doing much worse.  On September 27, 2002, Plaintiff was feeling significantly better, had a little more energy and was able to do 30 minute walks.  (AR 363).

Consistent with the ALJ's RFC determination, Dr. Krause concluded that claimant could perform light exertion work with limitations in doing repetitive reaching.  (AR 291).  Also consistent with the ALJ's RFC determination, Dr. Krause opined that Plaintiff could sit and stand/walk about two hours each, with normal breaks, in an eight-hour workday.  (AR 289).  It is significant to note that Dr. Krause specifically indicated that Plaintiff was capable of performing a low stress job.  (AR 289).  Accordingly, contrary to Plaintiff's assertion, the ALJ clearly relied on Dr. Krause's opinions in formulating his RFC assessment.

**2.  Dr. Dicken**

On November 6, 2001, Plaintiff presented to Dr. Dicken complaining primarily of symptoms related to Fibromyalgia.  (AR 273).  Plaintiff reported that she began developing diffuse pain about 10 to 11 years ago and had been previously treated for possible rheumatoid arthritis which was proven not the case.  (AR 273).  She had been placed on various medications and had recent laboratory work completed by Dr. Krause which was essentially unremarkable.  (AR 273).  Plaintiff reported her symptoms had been

getting worse, yet she also reported she felt better since she stopped working in February of 2001.  (AR 273).  On examination of her upper and lower extremities, Dr. Dicken noted there were no signs of any joint deformities, swelling or arthritic changes, no signs of muscle atrophy or asymmetry and no significant orthopedic abnormalities detected.  (AR 275).  An examination of her spine revealed no significant curvatures or deformities, but did reveal muscle spasming and tightness in the cervical and lumbar areas and numerous tender points throughout.  (AR 275-276).  Dr. Dicken noted that testing on grip strength revealed a lack of full effort by Plaintiff.  (AR 276-277).  Dr. Dicken found that Plaintiff had a tender point distribution and control points consistent with Fibromyalgia Syndrome.  (AR 276-277).

On January 7, 2002, Plaintiff followed up with Dr. Dicken. (AR 301).  Her physical examination was unchanged from her initial evaluation and Dr. Dicken assessed probable Fibromyalgia Syndrome and a history of depression.  (AR 301).

On July 15, 2002, Dr. Dicken indicated that Plaintiff was doing reasonably well.  (AR 302).  Plaintiff complained of some pain along the left side of her neck and some numbness in both hands that she believed was getting gradually worse.  (AR 302). Dr. Dicken diagnosed probable Fibromyalgia Syndrome, a history of depression and complaints of hand numbness ongoing for the last four months.  (AR 302).

On August 14, 2002, Dr. Dicken examined Plaintiff for numbness in both of her hands and chronic neck pain.  (AR 84-86, 304-306, 381-383).  His examination revealed no evidence of ///

peripheral nerve injury, entrapment or neuropathy in either upper extremity. (AR 86, 306, 383). Nevertheless, Dr. Dicken assessed moderate bilateral carpal tunnel syndrome. (AR 86, 306, 383).

On October 7, 2002, Plaintiff reported to Dr. Dicken with right sided low back and buttocks pain as well as right ankle and foot pain. (AR 82, 384). Dr. Dicken examined Plaintiff's lumbar area finding no abnormal curvatures or muscle spasm. His examination revealed complaints of pain and a decreased range of motion, but no muscle atrophy or asymmetry and no focal weakness of the lower extremities. (AR 82-83, 384-385). He assessed complaints of right sided low back and buttocks pain, probable Fibromyalgia Syndrome with complaints of diffuse pain, lack of restorative sleep and chronic fatigue, history of depression, and history of moderate bilateral carpal tunnel syndrome. (AR 83, 385).

On November 4, 2002, Dr. Dicken indicated that Plaintiff was doing about the same as far as her Fibromyalgia symptoms were concerned. (AR 80, 386). Plaintiff indicated that Amitriptyline and Vioxx had helped, and, overall, she was doing reasonably well. (AR 80, 386). Dr. Dicken assessed probable Fibromyalgia Syndrome with complaints of diffuse pain, lack of restorative sleep and chronic fatigue, complaints of low back pain with an essentially unremarkable MRI, complaints of right medial ankle pain, history of depression, and moderate bilateral carpal tunnel syndrome. (AR 80, 386).

On January 27, 2003, Dr. Dicken noted that Plaintiff was "doing better," with regard to her Fibromyalgia pain management. (AR 77, 388). He indicated that medication appeared to help her

sleep and that Vioxx also seemed to help.  (AR 77, 388).  He assessed probable Fibromyalgia Syndrome with complaints of diffuse pain, lack of restorative sleep and chronic fatigue, bilateral carpal tunnel syndrome of moderate severity, history of low back pain with negative MRI, history of depression and complaints of right medial ankle pain with negative x-rays.  (AR 77, 388).

On February 19, 2003, Dr. Dicken examined Plaintiff and compared a prior nerve conduction study, performed on August 14, 2002, to a study performed the day of the exam.  (AR 74-75, 389-390).  Dr. Dicken opined that Plaintiff had moderately severe left carpal tunnel syndrome which had gotten worse since the August 14, 2002 examination and moderate right carpal tunnel syndrome which had not regressed since August of 2002.  (AR 75, 390).

On March 3, 2003, Dr. Dicken noted that Plaintiff revealed that overall her Fibromyalgia management was doing okay.  (AR 78, 391).  Plaintiff mainly complained of increasing symptoms in her carpal tunnel syndrome in both upper extremities.  Dr. Dicken assessed probable Fibromyalgia Syndrome with complaints of diffuse pain, lack of restorative sleep and chronic fatigue, bilateral carpal tunnel syndrome of moderate severity (the left slightly more severe than the right), history of low back pain with negative MRI, and history of depression.  (AR 78, 391).  Dr. Dicken indicated that, pursuant to Plaintiff's request, he would be arranging for a referral for an orthopedic surgery consultation for possible carpal tunnel release.  (AR 78, 391).

Although Dr. Dicken did not explicitly assess Plaintiff's limitations, his reports and findings give insight into Plaintiff's condition, which the ALJ relied upon in this case.

Despite complaints of pain and fatigue, Dr. Dicken consistently found that Plaintiff was doing reasonably well and that her Fibromyalgia management was doing well.  Plaintiff's complaints to Dr. Dicken appeared to be primarily based on hand pain and numbness.  The ALJ addressed these findings by concluding that Plaintiff should avoid frequent or prolonged pushing or pulling of objects weighting 10 to 20 pounds and should additionally avoid frequent or prolonged overhead reaching.  (AR 110).  Contrary to Plaintiff's assertion, the ALJ relied on Dr. Dicken's opinions in formulating his RFC assessment in this case.

Plaintiff offers no credible evidence to contradict the ALJ's RFC determination.  The ALJ's findings regarding Plaintiff's limitations and RFC are supported by the weight of the evidence of record, including the opinions of Drs. Krause and Dicken, and are based on proper legal standards.  Thus, there is no error with regard to the ALJ's RFC determination in this case.  The evidence of record supports the ALJ's conclusion that Plaintiff is capable of performing a light exertion work, with the restrictions noted.

### 3.  Plaintiff's Ability to Work

Plaintiff contends that the ALJ erred by finding her capable of performing her past relevant work or other light level work existing in the national economy.  (Ct. Rec. 10, pp. 18-21). The Commissioner responds that since the ALJ properly found Plaintiff's testimony not fully credible and properly weighed the medical evidence of record, the ALJ's RFC finding is without error and the resultant step four and step five determinations of the

///

///

ALJ were also without error.  (Ct. Rec. 17, pp. 10-11).  The
Commissioner thus argues that, given the ALJ's accurate RFC
determination, the ALJ properly relied on the vocational expert's
testimony to find that Plaintiff could perform her past relevant
work as an intake counselor as well as other work existing in
sufficient numbers in the national economy.  (Ct. Rec. 17, pp. 10-
11).

     The ALJ concluded that Plaintiff has the RFC to perform a
wide range of light exertion work in this case.  (AR 107).  He
found that Plaintiff can sit or stand for two hours at a time, for
a total of six hours, in an eight hour workday with normal breaks,
sit for six hours at a time in an eight hour workday with normal
breaks, should avoid frequent or prolonged pushing or pulling of
objects weighing 10 to 20 pounds, could occasionally engage in
stooping, crouching, kneeling, crawling, or climbing of ramps or
stairs, should avoid climbing ladders, ropes, or scaffolds, and
should avoid frequent or prolonged overhead reaching.  (AR 107).
The ALJ additionally held that Plaintiff has mild to moderate,
frequent pain, for which she takes medication, but would be able
to remain reasonably attentive and responsive in a work setting
and would be able to carry out normal work assignments
satisfactorily.  (AR 107).  In making this determination, the ALJ
carefully considered and fully addressed the medical reports of
Drs. Krause and Dicken.  (AR 101-105).

     Based on Plaintiff's ability to perform light exertion level
work, coupled with the vocational expert's testimony, the ALJ
found that Plaintiff could return to her past relevant work as an
///

intake caseworker.  (AR 108).  The ALJ also determined that, within the framework of the Grids, and based on the vocational expert's testimony and Plaintiff's residual functional capacity, age, education, and work experience, there were a significant number of jobs in the national economy which she could perform despite her limitations.  (AR 108-109).  Examples of such jobs noted by the ALJ included work as a chemical dependency trainee, work in final assembly, and work as a surveillance system monitor. (AR 109).

The ALJ's credibility and RFC findings were supported by substantial evidence.  Accordingly, the hypotheticals presented to the vocational expert and relied upon by the ALJ in making his disability determination were also appropriate.  The ALJ's conclusion that there is work available which Plaintiff is capable of performing is thus based upon substantial evidence and free of legal error.

**C.  Fully and Fairly Develop the Record**

Plaintiff lastly asserts that the ALJ erred by failing to hold a supplemental hearing, following the entering of new exhibits into the record and following a request made by Plaintiff, though counsel, for the holding of a supplemental hearing.  (Ct. Rec. 10, pp. 21-22).  Plaintiff argues that, because a supplemental hearing was not held, she was denied due process and the record was not fully and fairly developed.  (Ct. Rec. 10, p. 22).  The Commissioner responds that the ALJ fully and fairly developed the record and was under no duty to order a supplemental hearing.  (Ct. Rec. 17, pp. 11-12).
///

The ALJ has a duty to fully and fairly develop the record. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  The ALJ is required to take steps to obtain additional evidence where the medical evidence of record is insufficient to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1512(e), 416.912(e).  If a claimant can demonstrate prejudice or unfairness as a result of the ALJ's failure to fully and fairly develop the record, the decision may be set aside.  *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1991).  Accordingly, with respect to the ALJ's duty to develop the record, the Ninth Circuit places the burden of proving prejudice or unfairness on Plaintiff.

Plaintiff asserts that the ALJ erred by failing to hold a supplemental hearing as a result of new documents entered into the record following the administrative hearing and prior to the ALJ's decision in this matter.  (Ct. Rec. 10, pp. 21-22).  Plaintiff complains about not having a supplemental hearing following the submission of additional medical records from Dr. Krause (AR 360-380) and the Medical Source Statement of Ability to do Work-Related Activities (Physical) filled out by Dr. Willkens on September 15, 2002 (AR 356-359).  (Ct. Rec. 10, pp. 21-22).

Plaintiff argues "in particular," that submission of the form completed by Dr. Willkens, without the possibility to cross-examine Dr. Willkens regarding that information, created prejudice.  (Ct. Rec. 10, p. 22).  However, Plaintiff was presented with an opportunity to cross-examine Dr. Willkens as to the limitations expressed in the form at the time of the

///

///

administrative hearing, since the limitations noted by Dr. Willkens on the form were identical to those he assessed at the time of the administrative hearing. (AR 428-430). Furthermore, and most important, the ALJ chose to reject those findings when making his RFC determination in this case, concluding that Plaintiff was much more limited than Dr. Willkens assessed. (AR 107). Plaintiff also fails to allege or demonstrate any prejudice related to the submission of the medical records of Dr. Krause.

Based on the foregoing, Plaintiff has failed to demonstrate any prejudice or unfairness. There was sufficient evidence in the record from which the ALJ could make his determination; therefore, further inquiry regarding Plaintiff's condition was not required. Accordingly, the ALJ fulfilled his duty of fully and fairly developing the record and a supplemental hearing was not warranted in this case.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is capable of performing a wide range of light exertion work, with the limitations noted, including her past work as an intake caseworker as well as other work existing in sufficient numbers in the national economy, is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 9) is **DENIED**.

1           2.   Defendant's Motion for Summary Judgment (Ct. Rec.

2  16) is **GRANTED**.

3           3.   The District Court Executive is directed to enter

4  judgment in favor of Defendant, file this Order, provide a copy to

5  counsel for Plaintiff and Defendant, and **CLOSE** this file.

6         **DATED** this __16th__ day of November, 2005.

7

8                             s/Michael W. Leavitt

9                         MICHAEL W. LEAVITT

10                  UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28